Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: March 31st, 2019**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

| | |
|---|---|
| IN RE: | CASE NO. 5:18-bk-50084 |
| LARRY EDWARD WOOD and JESSICA ANN WOOD, | CHAPTER 7 |
| Debtors. | JUDGE FRANK W. VOLK |
| LARRY EDWARD WOOD and JESSICA ANN WOOD, | ADVERSARY PROCEEDING NO. 5:18-ap-5006 |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Pending is the Motion for Summary Judgment filed by the United States Department of Housing and Urban Development ("HUD") on November 2, 2018 [dckt. 9]. The Woods submitted their Response on November 13, 2018 [dckt. 13], and HUD replied on November 23, 2018. This matter is ready for adjudication.

**I.**

**A.     Factual Background**

The facts are uncontested. On September 9, 2008, Mr. Wood borrowed $39,739.44 to purchase a modular/mobile home. That loan was insured by HUD in the case of default. Mr.

Wood ultimately defaulted on the loan in late July 2014. HUD paid the deficiency remaining after default in November 2015 -- an amount totaling $23,066.66. Thereafter, on November 20, 2015, HUD made a demand for payment on Mr. Wood for the deficiency amount.

In December 2015, HUD issued to Mr. Wood a Notice of Intent to Collect by Treasury Offset. This Notice of Intent informed Mr. Wood that the United States Department of the Treasury (the "Treasury") could offset the Woods' tax overpayment amounts and remit those monies to HUD as payments on Mr. Wood's debt.

The Treasury ultimately offset the Woods' debt to HUD with a federal tax overpayment on February 23, 2017. The amount of the overpayment was $9,961, leaving a remaining balance owed to HUD of $15,486.47 plus interest.

The Woods filed their Chapter 7 case on March 21, 2018, and subsequently filed their federal and state income tax returns on March 26, 2018. They ended up with a federal income tax overpayment of $6,086 and a state income tax overpayment of $316. The Treasury used the income tax overpayment to offset the Woods' remaining debt to HUD on April 4, 2018. No offset was made using the state tax overpayment.[1]

The Woods initiated the instant adversary proceeding by filing a complaint on May 17, 2018. They sought avoidance of HUD's lien and turnover of the offset funds remitted to HUD.

---

[1] There was a dispute on this point at one time. The Woods alleged in the complaint that an offset was made using the state tax overpayment. Exhibit E of HUD's Motion for Summary Judgment, however, demonstrates otherwise. Exhibit E is the Declaration of Brian M. Dillon, Director of the Asset Recovery Division at HUD's Financial Operations Center. He attests that no offset was made using the state income tax overpayment. The Woods have made no showing to rebut the Declaration and, indeed, they discuss only the federal income tax overpayment setoff in their Response. It is apparent that the matter is now undisputed.

**B.     Summary of Arguments**

The Woods assert that they are entitled to their 2017 federal tax overpayment, asserting it constitutes a tax refund which is part of their bankruptcy estate, protected by the automatic stay, exemptible, and not recoverable by creditors.

In opposition, HUD claims that the tax overpayment is not considered a tax refund under 26 U.S.C. § 6402 and thus could never have become part of the Woods' estate. Consequently, the Woods could never have exempted the amounts and no violation of the automatic stay occurred when the Treasury intercepted and remitted the monies to HUD.

## II.

**A.     Legal Standards**

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bank. P. 7056. The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must do so by offering "sufficient proof[ ] in the form of admissible evidence" rather than relying solely on the allegations in her complaint. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility,

summary judgment is not appropriate." Fed. R. Civ. P. 56 (advisory committee's note to 1963 amendment).

Federal law permits "entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. V. Strumpf*, 516 U.S. 16, 19 (1996). This practice is known as a setoff. Setoffs are generally governed by § 553(a) of the Bankruptcy Code, which provides that a creditor may exercise its right of setoff without violating the Bankruptcy Code:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a). A right of setoff hinges upon proof of four elements: (1) the creditor's claim arose before commencement of the case; (2) the creditor's debt to the debtor arose before the commencement of the case; (3) the claim and debt must be mutual; and (4) the claim must be valid and enforceable. *Id.*; *see also U.S. Dept. of Agriculture Rural Housing Svc. v. Riley*, 485 B.R. 361, 365 (W.D. Ky. 2012). Essentially, "Section 553 does not actually create any setoff rights, but merely preserves the setoff rights that exist under applicable nonbankruptcy law." *Addison v. U.S. Dept. of Agriculture (In re Addison)*, 533 B.R. 520, 528 (Bankr. W. D. Va. 2015); *see also Strumpf*, 516 U.S. at 18.

The nonbankruptcy law that authorizes the Treasury to intercept tax overpayments and apply them to pre-existing debts owed to federal agencies like HUD is the Tax Offset Program ("T.O.P."), codified at 26 U.S.C. § 6402. Section 6402(d) provides materially as follows:

> (1) In general. -- Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt . . . to such agency, the Secretary shall—

4

Case 5:18-ap-05006   Doc 19   Filed 03/31/19   Entered 03/31/19 16:17:35   Desc Main
                    Document      Page 5 of 7

> (A) reduce the amount of any overpayment payable to such person by the amount of such debt;
>
> (B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and
>
> (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

26 U.S.C. § 6402(d); *see Sexton v. Dept. of Treasury, Internal Revenue Svc. (In re Sexton)*, 508 B.R. 646, 525 (Bankr. W. D. Va. 2014) (Connelly, J.).

The decisional divide now confronted by the Court involves two matters, namely, (1) whether a debtor's tax overpayment becomes property of the estate and hence protected by the stay, and (2) whether, if part of a debtor's estate, the debtor may exempt the overpayments and defeat a governmental creditor's § 553 right of setoff. A split of authority has developed on these and related issues. *Compare, e.g.*, *In re Addison*, 533 B.R. 520 (Bankr. W.D. Va. 2015) (concluding § 6402 setoff rights are subject to the automatic stay); *In re Sexton*, 508 B.R. 646 (concluding that a properly claimed exemption under § 522 supersedes § 553), *with United States v. Gould (In re Gould)*, 401 B.R. 415, 424 (9th Cir. B.A.P. 2009), *aff'd* 603 F.3d 1100 (9th Cir. 2010), *cert. denied*, 562 U.S. 1030 (2010); *Internal Revenue Service v. Luongo (In re Luongo)*, 259 F.3d 323, 335 (5th Cir. 2001); *U.S. Dept. of Agriculture Rural Housing Svc. v. Riley*, 485 B.R. 361, 365 (W.D. Ky. 2012).

Having considered both lines of authority, the Court is persuaded by the reasoning of my colleagues within our Circuit. Hence, the Court adopts the analyses and holdings reached in *In re Addison* and *In re Sexton*. Inasmuch as the Court is unable to materially improve upon the discussions appearing in those two decisions, I need write no further on the matter. I would add only a few general observations.

Bankruptcy cases differ significantly from routine civil litigation, and creditors may not proceed the same way as they would had a debtor not petitioned for relief. The decisions in *In re Addison* and *In re Sexton*, beyond their resolute adherence to the statutory texts, also reflect more appropriately the overarching policies of the Bankruptcy Code. Bankruptcy collection procedures were enacted not only to allow a fresh start but also to assist in the orderly administration and payment of debts. Rather than allow a chaotic race to judgment or other remedies, the Code established procedures for, priorities of, and practices relating to, creditors and their respective recoveries from the estate. To allow the Treasury to supervene that reticulate structure via setoff would seem to require much more in the way of statutory guidance than has been provided by Congress. Indeed, as noted in *In re Sexton* and *In re Addison*, a contrary result poses a considerable threat to settled bankruptcy principles and policies.

Consequently, the Court concludes that the Woods' right to a tax overpayment vested in them at midnight on December 31, 2017. The Treasury did not act to offset the Woods' debt to HUD until after their petition was filed. Therefore, their right to a tax overpayment also became property of their estate when they filed their petition on March 21, 2018.

Furthermore, any exemption the Woods elected in their tax overpayment trumps any right of HUD to offset against the Woods' debt. And since the Woods listed their anticipated 2017 federal tax refund on their Schedule A/B and exempted portions of it on Schedule C, those exempted portions are not available for setoff by HUD. The nonexempt portions, however, would, *inter alia*, be available for setoff should HUD wish to pursue a stay lift.

## III.

In sum, a debtor's interest in any tax overpayment vests in the debtor at midnight on the last day of the applicable tax year and also vests in the debtor's estate at the time of the petition filing, so long as the Treasury has not acted to setoff by that time. That contingent right is further protected by the automatic stay. Moreover, consistent with the adopted authorities, the Court concludes that § 522(c) prevents a creditor from exercising its setoff rights against properly exempted tax overpayments. Accordingly,

**IT IS ORDERED** that HUD's Motion for Summary Judgment be, and is hereby, **DENIED. IT IS FURTHER ORDERED** that the parties be, and hereby are, directed to consult and report to the Court no later than April 15, 2019, respecting the further events, if any, that must precede final judgment herein and, should there be none, they tender a proposed Judgment by that date for review and entry by the Court.